IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| ROBERT FLETCHER, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | 7:06cv5001 |
| vs. | ) | |
| | ) | MEMORANDUM AND ORDER |
| STATE OF NEBRASKA, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the court on the following pending motions:

(1)     Filing no. 15, the Motion to Dismiss filed by defendant-Cherry County Attorney Eric Scott;

(2)     Filing no. 16, the Motion to Dismiss filed by defendant-"Office of" Cherry County Attorney;

(3)     Filing no. 17, the Motion to Dismiss filed by defendant-Cherry County;

(4)     Filing no. 19, the Motion to Dismiss filed by defendants-State of Nebraska, Nebraska State Patrol ("NSP"), and NSP Trooper Dennis Griffiths (collectively "State defendants");

(5)     Filing no. 25, the plaintiff's Objection to the foregoing Motions to Dismiss;

(6)     Filing no. 33, the Cherry County defendants' Withdrawal of filing nos. 15, 16 and 17 in light of the plaintiff's Amended Complaint;

(7)     Filing no. 34, the (renewed) Motion to Dismiss filed by defendant-Cherry County;

(8)     Filing no. 35, the (renewed) Motion to Dismiss filed by defendant-"Office of" Cherry County Attorney;

(9)     Filing no. 36, the (renewed) Motion to Dismiss filed by defendant-Cherry County Attorney Eric Scott;

(10)     Filing no. 40, the State defendants' Withdrawal of filing no. 19 in light of the plaintiff's Amended Complaint; and

(11)     Filing no. 41, the (renewed) Motion to Dismiss filed by defendants-State of Nebraska, Nebraska State Patrol, and NSP Trooper Dennis Griffiths.

1

In his Amended Complaint (filing no. 29), the pro se plaintiff, Robert Fletcher, alleges claims against the State of Nebraska, the Nebraska State Patrol ("NSP"), Cherry County, Nebraska, the Cherry County Attorney's Office, as well as NSP Trooper Dennis Griffiths and Cherry County Attorney Eric Scott, in their individual and official capacities. The plaintiff seeks monetary, declaratory and injunctive relief pursuant to 42 U.S.C. §§ 1981, 1983, 1985 and 1988, and he asserts tort claims under Nebraska law. In ¶ 13 of filing no. 29, the plaintiff states that the facts pertaining to his claims are set forth in ¶¶ 14 through 32 of the Amended Complaint.

The plaintiff protests that Trooper Griffiths violated the plaintiff's constitutional rights on January 12, 2004 by: detaining the plaintiff for a traffic violation; issuing a speeding ticket; arresting the plaintiff when the plaintiff refused to sign the ticket; seizing and confiscating a firearm in the plaintiff's possession, and arranging to have the plaintiff's vehicle towed. Thereafter, according to the plaintiff, Griffiths altered the videotape of the incident to destroy evidence. Also, on May 23, 2005, Griffiths allegedly made a comment to third parties about the plaintiff in the course of an investigation concerning the plaintiff's address, and on that same date "spread gossip" about the plaintiff. Griffiths delayed returning the plaintiff's firearm to him until August 1, 2005, and demanded that the plaintiff sign a form in the presence of a witness. All of the foregoing, according to the plaintiff, constituted overt acts in furtherance of a conspiracy to harass the plaintiff, although the plaintiff does not indicate the motive or purpose for the conspiracy.

As discussed later in this Memorandum and Order, the plaintiff challenges prosecutorial decisions by Cherry County Attorney Eric Scott. He also contends that Scott conspired with Griffiths.

2

## 42 U.S.C. § 1985

Citing 42 U.S.C. § 1985, the plaintiff alleges that the defendants conspired to deprive him of his civil rights. However, 42 U.S.C. § 1985(1) and (2) (interference with performance of official duty; obstruction of justice and intimidation of party, witness or juror) have no application to the plaintiff, and 42 U.S.C. § 1985(3) does not provide the plaintiff with a cause of action. The Eighth Circuit Court of Appeals interprets 42 U.S.C. § 1985(3) as follows:

> In order to prove the existence of a civil rights conspiracy under § 1985(3), the [plaintiff] must prove: (1) that the defendants did 'conspire,' (2) 'for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or equal privileges and immunities under the laws,' (3) that one or more of the conspirators did, or caused to be done, 'any act in furtherance of the object of the conspiracy,' and (4) that another person was 'injured in his person or property or deprived of having and exercising any right or privilege of a citizen of the United States.' .... 'The 'purpose' element of the conspiracy requires that the plaintiff prove a class-based 'invidiously discriminatory animus.''

Larson ex rel. Larson v. Miller, 76 F.3d 1446, 1454 (8th Cir. 1996) (*en banc*). Accord Lindstedt v. Missouri Libertarian Party, 160 F.3d 1197, 1198 (8th Cir. 1998) (absent "some racial or other class-based invidiously discriminatory animus" behind the defendant's conduct, a claim pursuant to 42 U.S.C. § 1985(3) fails). *See also* Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 267-68 (1993): "We said that '[t]he language [of § 1985(3)] requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." Id. at 268-69. A review of the plaintiff's pleadings reveals that the plaintiff has asserted no racial or other class-based invidiously discriminatory animus. Therefore, the plaintiff has not alleged a claim on which

3

relief may be granted pursuant to 42 U.S.C. § 1985(3).

The plaintiff has also improperly invoked 42 U.S.C. § 1981 ("[a]ll persons within the jurisdiction of the United States are entitled to the same right ... as is enjoyed by white citizens ..."), which has no application to his factual allegations.  Thus, the plaintiff's claims (including his allegations of conspiracy) will be analyzed pursuant to 42 U.S.C. § 1983.

### Preliminary Decisions

As a preliminary matter, the defendants' two "withdrawal" motions (filing nos. 33 and 40) are granted.  Therefore, the withdrawn motions (filing nos. 15, 16, 17 and 19) are stricken at the request of the defendants and are superseded by the defendants' renewed motions.  The court assumes that the plaintiff's Objection (filing no. 25) applies to the defendants' renewed motions (filing nos. 34, 35, 36 and 41).

Also, all claims based on ¶¶ 27, 28, 29 and 30 of the Amended Complaint, relating to the involvement of Eric Scott and others in the investigation of abuse of the plaintiff's minor child, Alice Fletcher, are dismissed.  The plaintiff has asserted those allegations and claims in another case pending in this court, *i.e.*, Case No. 7:05cv5024, against the same individuals.  "[P]laintiffs have no right to maintain two actions on the same subject in the same court, against the same defendant[s] at the same time."  Curtis v. Citibank, N.A., 226 F.3d 133, 138-39 (2d Cir. 2000).  Accord Missouri ex rel. Nixon v. Prudential Health Care Plan, Inc., 259 F.3d 949, 954 (8th Cir. 2001) ("Plaintiffs may not pursue multiple federal suits against the same party involving the same controversy at the same time.").

In addition, ¶ 31 of the Amended Complaint, in which the plaintiff alleges that Eric Scott and Dennis Griffiths injured the plaintiff by spreading gossip about him, fails to state a claim on which relief may be granted based on the Constitution or laws of the United

4

States.  Allegations of injury to reputation or defamation of character do not state a federal

cause of action and amount, at most, to tort claims arising under state law, not federal

constitutional issues.[1]

**Motions to Dismiss**

State Defendants

In filing no. 41, the State defendants assert sovereign immunity and qualified

immunity as grounds for dismissal of the plaintiff's claims against them.  As for sovereign

immunity, the Eleventh Amendment to the United States Constitution bars claims for

monetary relief by private parties against a state, a state agency or an employee of a state

in his or her official capacity.  See, *e.g.*, Edelman v. Jordan, 415 U.S. 651, 663 (1974) ("a

suit by private parties seeking to impose a liability which must be paid from public funds in

the state treasury is barred by the Eleventh Amendment.").  Thus, all claims for monetary

relief of any kind against the State of Nebraska, the NSP[2] and Griffiths in his official

---

[1]Claims such as defamation, based on injury to reputation, do not state a claim for deprivation of liberty or property protected by the Due Process Clause of the United States Constitution.  Siegert v. Gilley, 500 U.S. 226, 229 (1991); Paul v. Davis, 424 U.S. 693, 712 (1976).  A claim based on a violation only of state law does not amount to a claim on which relief may be granted under 42 U.S.C. § 1983.  See, e.g., Bagley v. Rogerson, 5 F.3d 325, 328 (8th Cir. 1993):  "[A] violation of state law, without more, does not state a claim under the federal Constitution or 42 U.S.C. § 1983."

[2]The Nebraska State Patrol ("NSP") is an agency of the State of Nebraska and shares the State's sovereign immunity under the Eleventh Amendment. See, e.g., Nebraska Methodist Health System, Inc. v. Department of Health, 543 N.W.2d 466, 469 (Neb. 1996): "Generally speaking, a suit against a state agency is a suit against the State itself."  Accord County of Lancaster v. State, Dept. of Public Institutions, 529 N.W.2d 791, 794 (Neb. 1995):  "For the purposes of applying the doctrine of sovereign immunity, a suit against an agency of the state is the same as a suit against the state."

capacity[3] must be dismissed.

Furthermore, "a State is not a 'person' as that term is used in [42 U.S.C.] § 1983, and is not suable under the statute, regardless of the forum where the suit is maintained." Hilton v. South Carolina Public Railways Com'n, 502 U.S. 197, 199-201 (1991), *citing* Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989).  Thus, 42 U.S.C. § 1983 does not create a cause of action against the State of Nebraska or its agencies and instrumentalities.

While states and state agencies retain their immunity against suits in federal court, state employees in their official capacity may be sued in federal court under the federal civil rights laws in limited circumstances.  Under the doctrine of Ex Parte Young, 209 U.S. 123, 155-56 (1908), a private party may seek prospective injunctive relief in federal court against state employees in their official capacity, even if the state is otherwise protected by the Eleventh Amendment.  See, *e.g.*, Klingler v. Director, Dept. of Revenue, 281 F.3d 776, 777 (8th Cir. 2002).   The doctrine of Ex Parte Young, 209 U.S. 123 (1908), which ensures that state officials do not use the Eleventh Amendment to avoid compliance with federal law, carves out an exception to Eleventh Amendment immunity.  However, the exception is narrow and applies only to prospective relief.  The exception does not permit judgments against state officers in their official capacity declaring that they violated federal law in the past.  See, *e.g.*, Green v. Mansour, 474 U.S. 64, 68, 73 (1985).  Similarly, while a suit to

---

[3]The Eleventh Amendment prevents the plaintiff from recovering damages pursuant to 42 U.S.C. § 1983 from state employees in their official capacity because a suit against a public employee in his or her official capacity is considered a suit against the public employer.  Kentucky v. Graham, 473 U.S. 159, 165 (1985).  Therefore, the plaintiff's claim against Griffiths, a state employee, in his official capacity, is in reality a claim against the governmental entity that employs that defendant, i.e., the State of Nebraska.

enjoin state officials  in their official capacity may proceed if the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective, a declaratory judgment establishing **past liability** of the State is nevertheless forbidden by the Eleventh Amendment.  Verizon Maryland, Inc. v. Public Service Com'n of Maryland, 535 U.S. 635, 646 (2002).

In this case, while the plaintiff accuses the State defendants in vague and conclusory terms of ongoing conspiratorial motives to harass him, he has not alleged any actual prospective conduct to enjoin.  Certainly, the court will not enjoin Trooper Griffiths from performing his professional duties as an officer of the State Patrol.  The exception to Eleventh Amendment immunity created in Ex Parte Young does not apply to this case.

One other exception to Eleventh Amendment immunity permits suit against a state official in his or her individual capacity, Hafer v. Melo, 502 U.S. 21 (1991).  However, although a "person" who may be sued pursuant to 42 U.S.C. § 1983 does include a state employee in his or her individual capacity, Griffiths, in his individual capacity, claims qualified immunity from the plaintiff's claims for damages.

Qualified immunity is a question of law to be determined by the court and should ordinarily be decided long before trial.  Hunter v. Bryant, 502 U.S. 224, 228 (1991).  "Public officials, of course, are entitled to qualified immunity from liability for damages under 42 U.S.C. § 1983 if 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Domina v. Van Pelt, 235 F.3d 1091, 1096 (8th Cir. 2000), *citing* Harlow v. Fitzgerald, 547 U.S. 800 (1982).  *See also* Wilson v. Layne, 526 U.S. 603, 609, 614 (1999):

[G]overnment officials performing discretionary functions generally are

7

> granted a qualified immunity and are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'...
>
> What this means in practice is that 'whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken.'

(Citations omitted.) "Stated another way, qualified immunity shields a defendant from suit if he or she could have reasonably believed his or her conduct to be lawful 'in light of clearly established law and the information [that the defendant] possessed .... The qualified immunity standard "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." ' " Smithson v. Aldrich, 235 F.3d 1058, 1061 (8th Cir. 2000).

As explained in Hope v. Pelzer, 536 U.S. 730 (2002), a government employee charged with the federal criminal offense of willfully and under color of law depriving a person of constitutional rights, under 18 U.S.C. § 242, is entitled to "fair warning" that the conduct in question would deprive the victim of a constitutional right. Id. at 739-40. The "fair warning" requirement of 18 U.S.C. § 242 is identical to the qualified immunity standard for a civil damages action under 42 U.S.C. § 1983. Id. at 740-41. Thus, the "salient question" is whether the state of the law when the defendant acted gave the defendant "fair warning" that his or her conduct was unconstitutional. Id. at 741.

Thus, for a federally-protected right to be "clearly established" at the time a defendant acted, the law must be clear in regard to the official's particular actions in the particular situation. See Anderson v. Creighton, 483 U.S. 635, 639-40 (1987): "The contours of the right must be sufficiently clear that a reasonable official would understand

8

that what he is doing violates that right." Id. at 640. "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful ... but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Id. (citations omitted).

Qualified immunity is the norm. "[The plaintiff's] burden is not easily discharged: 'That qualified immunity protects government actors is the usual rule; only in exceptional cases will government actors have no shield against claims made against them in their individual capacities.'" Foy v. Holston, 94 F.3d 1528, 1532 (11th Cir. 1996). The first task of a "court evaluating a claim of qualified immunity" is to "determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all . . . " Wilson v. Layne, 526 U.S. 603, 609 (1999).

Griffiths is shielded by qualified immunity for all of the actions alleged by the plaintiff with one exception. In other words, Griffiths does not have to defend his detention of the plaintiff for the traffic violation; the issuance of a speeding ticket; the arrest of the plaintiff upon the plaintiff's refusal to sign the ticket; the seizure of the firearm from the plaintiff; the towing of the plaintiff's vehicle; the delayed return of the plaintiff's firearm; the requirement that the plaintiff sign a form in the presence of a witness to obtain his firearm; and the comment or gossip about the plaintiff. Those actions, as described in the Amended Complaint, either did not amount to a violation of the Constitution at all, or they did not violate *clearly established* statutory or constitutional rights of which a  reasonable person would have known.

The only allegation in the Amended Complaint for which Griffiths' entitlement to qualified immunity cannot be determined on the basis of the pleadings alone is the plaintiff's

9

accusation that Griffiths altered the videotape of the traffic encounter in an effort to destroy evidence.  Although the plaintiff does not indicate how the alteration of the videotape occurred or how that conduct damaged him, alteration of evidence is not the kind of conduct which a law enforcement officer could have reasonably believed to be lawful. Thus, Griffiths' reliance on qualified immunity or any other defense to that accusation may be challenged in a motion for summary judgment on the basis of a factual record. However, in the context of a motion to dismiss, that accusation must be assumed to be true and is not afforded immunity.

Qualified immunity does not foreclose a plaintiff's request for injunctive relief. However, as previously discussed, the plaintiff has alleged no prospective conduct to enjoin.  Thus, filing no. 19, the Motion to Dismiss filed by the State defendants, is granted in part and denied in part as follows:   All of the plaintiff's claims based on the Constitution and laws of the United States against the State of Nebraska, the Nebraska State Patrol, and Trooper Griffiths in his official capacity are dismissed with prejudice.  All of the plaintiff's claims based on the Constitution and laws of the United States against Trooper Griffiths, in his individual capacity, with the sole exception of the plaintiff's claim that Griffiths altered a videotape in an effort to destroy evidence, are dismissed with prejudice.

With the dismissal of the federal claims against the State of Nebraska and the NSP, the plaintiff's claims under state law against those defendants will be dismissed without prejudice pursuant to 28 U.S.C. § 1367.  First, the grant of supplemental jurisdiction in federal court under 28 U.S.C. § 1367(a) does not extend to claims against nonconsenting state defendants.  Raygor v. Regents of Univ. of Minn., 534 U.S. 533, 541 (2002).  Also, in the discretion afforded by 28 U.S.C. § 1367(c)(3), the court declines to exercise

10

supplemental jurisdiction over the claims arising under state law, now that the claims over which the court has original jurisdiction have been dismissed.  Consequently, the State of Nebraska and the Nebraska State Patrol are dismissed from this litigation.  If the plaintiff wishes to pursue his claims under state law against those parties, he will have to file an action in state court before the expiration of the applicable statute(s) of limitation.

Thus, only one State defendant remains, and only one claim against that defendant remains.  This case will proceed against Trooper Griffiths, in his individual capacity, on the claim that he altered evidence.

<u>Cherry County Defendants</u>

The Cherry County defendants correctly point out that the "Office of" Cherry County Attorney is merely a unit within Cherry County, Nebraska, and such units within a county lack the legal capacity to sue or be sued in their own names.  As the defendants note, subordinate units of a county cannot serve as separate defendants in litigation.  Construing the Amended Complaint liberally, the defendant is Cherry County, Nebraska, and the "Office of Cherry County Attorney" must be terminated as an independent defendant separate from Cherry County.  Filing no. 35, the (renewed) Motion to Dismiss filed by defendant-the Office of Cherry County Attorney, is granted.

In ¶¶ 24, 25 and 26 of the Amended Complaint, the plaintiff protests criminal charges and complaints filed by Cherry County Attorney Eric Scott and Scott's other prosecutorial decisions.  However, Scott correctly maintains that he is shielded by absolute prosecutorial immunity from liability for damages under 42 U.S.C. § 1983 for initiating a prosecution and presenting the government's case, for conduct occurring in the courtroom, for actions intimately associated with the judicial process, including those preliminary to the initiation

11

of a prosecution and apart from the courtroom which relate to the prosecutor's role as advocate. Buckley v. Fitzsimmons, 509 U.S. 259, 272-73 (1993); Imbler v. Pachtman, 424 U.S. 409, 430 (1976). See also Anderson v. Simon, 217 F.3d 472, 475-76 (7th Cir. 2000) (prosecutor is absolutely immune from claim predicated on delay in charging), cert. denied, 531 U.S. 1073 (2001); Webster v. Gibson, 913 F.2d 510, 513-14 (8th Cir. 1990) (prosecutor has absolute immunity for civil rights claim based on denial of right to a prompt judicial determination of probable cause). Prosecutorial immunity does not mean that the defendant acted legally or correctly, but only that a prosecutor may not be sued for damages pursuant to 42 U.S.C. § 1983 for functions relating to prosecutorial decisions.

A conclusory allegation of conspiracy, evil motive, malice or knowledge of wrongdoing will not defeat prosecutorial immunity. See, *e.g.*, Jones v. Cannon, 174 F.3d 1271, 1281 (11th Cir. 1999); Lomaz v. Hennosy, 151 F.3d 493, 498 n.7 (6th Cir. 1998); Pinaud v. County of Suffolk, 52 F.3d 1139, 1148 (2d Cir. 1995). *See also* Rowe v. City of Fort Lauderdale, 279 F.3d 1271, 1282-83 (11th Cir. 2002):

> It would be cold comfort for a prosecutor to know that he is absolutely immune from direct liability for actions taken as prosecutor, if those same actions could be used to prove him liable on a conspiracy theory involving conduct for which he was not immune. '[T]he vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system' would be unduly chilled. Imbler v. Pachtman, 424 U.S. 409, 427-28 (1976). That is why acts for which a prosecutor enjoys absolute immunity may not be considered as evidence of the prosecutor's membership in a conspiracy for which the prosecutor does not have immunity . . . So, the district court correctly granted summary judgment to [the prosecutor] on that conspiracy claim, as well as the substantive claim of malicious prosecution.

As to Scott, the remaining allegations of the Amended Complaint fail to state a claim on which relief may be granted. As previously discussed, ¶¶ 27, 28, 29 and 30 of the

12

Amended Complaint, relating to the involvement of Eric Scott in a child abuse investigation, are dismissed as duplicative of the claims against Scott in Case No. 7:05cv5024.  The allegations of ¶ 31 regarding "gossip" fail to state a federal claim.  The remaining paragraphs of the Amended Complaint contain no more than the vague and conclusory allegations of conspiracy and evil motive referenced above.  Accordingly, filing no. 36, the (renewed) Motion to Dismiss filed by Cherry County Attorney Scott, is granted, and Eric Scott, in his individual and official capacities, is dismissed from this litigation.

Even if the County Attorney had violated the plaintiff's constitutional rights, the federal civil rights laws contain no equivalent to the common law tort liability based on respondeat superior.  Therefore, under 42 U.S.C. § 1983, Cherry County may not be held liable on principles of vicarious liability or respondeat superior for constitutional injuries allegedly inflicted by its employees.  See, *e.g.*, Shrum ex rel. Kelly v. Kluck, 249 F.3d 773, 778 (8th Cir. 2001), *citing* Board of County Commissioners of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 405 (1997) and City of Canton v. Harris, 489 U.S. 378, 385 (1989): "Rigorous standards of culpability and causation must be applied to ensure that [an employer] is not held liable solely for the actions of its employees . . . The purpose of such a stringent standard is to prevent § 1983 liability from collapsing into state tort law or into respondeat superior liability, an intent not contemplated by § 1983."

"A plaintiff may establish municipal liability under § 1983 by proving that his or her constitutional rights were violated by an 'action pursuant to official municipal policy' or misconduct so pervasive among non-policymaking employees of the municipality 'as to constitute a 'custom or usage' with the force of law.'" Kuha v. City of Minnetonka, 365 F.3d 590, 603 (8th Cir. 2003).  See also Turney v. Waterbury, 375 F.3d 756, 761-62 (8th Cir

2004): "'In a section 1983 action, a municipality may only be held liable for constitutional violations which result from a policy or custom of the municipality' . . . " (citation omitted.) The plaintiff has not identified an official policy or widespread custom of Cherry County, Nebraska which constituted the moving force behind a constitutional injury inflicted on him. Therefore, filing no. 34, the (renewed) Motion to Dismiss filed by defendant-Cherry County, Nebraska, is granted, and Cherry County is dismissed from this litigation.

With the dismissal of the federal claims against Cherry County, Nebraska, the Office of the Cherry County Attorney, and Cherry County Attorney Eric Scott, in his individual and official capacities, the court declines to exercise supplemental jurisdiction over any claims arising under Nebraska law against those defendants. 28 U.S.C. § 1367(c)(3). Therefore, the plaintiff will have to file a timely action in an appropriate state forum to preserve his state-law claims against the Cherry County defendants.

THEREFORE, IT IS ORDERED:

(1)    That filing no. 15, the Motion to Dismiss filed by defendant-Cherry County Attorney Eric Scott, is stricken at the defendant's request (filing no. 33);

(2)    That filing no. 16, the Motion to Dismiss filed by defendant-Office of Cherry County Attorney is stricken at the defendant's request (filing no. 33);

(3)    That filing no. 17, the Motion to Dismiss filed by defendant-Cherry County is stricken at the defendant's request (filing no. 33);

(4)    That filing no. 19, the Motion to Dismiss filed by defendants-State of Nebraska, Nebraska State Patrol, and NSP Trooper Dennis Griffiths is stricken at the request of the defendants (filing no. 40);

(5)    That filing no. 25, the plaintiff's Objection, is denied;

(6)    That filing no. 33, the Cherry County defendants' Withdrawal of filing nos. 15, 16 and 17 in light of the plaintiff's Amended Complaint, is granted;

(7)    That filing no. 34, the (renewed) Motion to Dismiss filed by defendant-Cherry

14

County, is granted, and Cherry County is dismissed from this litigation;

(8)     That filing no. 35, the (renewed) Motion to Dismiss filed by defendant-Office of Cherry County Attorney, is granted, and the Office of Cherry County Attorney is dismissed from this litigation;

(9)     That filing no. 36, the (renewed) Motion to Dismiss filed by defendant-Cherry County Attorney Eric Scott, is granted, and Eric Scott is dismissed from this litigation;

(10)     That filing no. 40, the State defendants' Withdrawal of filing no. 19 in light of the plaintiff's Amended Complaint, is granted;

(11)     That filing no. 41, the (renewed) Motion to Dismiss filed by defendants-State of Nebraska, Nebraska State Patrol ("NSP"), and NSP Trooper Dennis Griffiths, is granted in part and denied in part as follows:

a.     Defendants-State of Nebraska and Nebraska State Patrol are dismissed from this litigation;

b.     All claims against NSP Trooper Dennis Griffiths, in his official capacity, are dismissed from this litigation;

c.     All claims against Trooper Dennis Griffiths, in his individual capacity, with the sole exception of the plaintiff's claim that Griffiths altered a videotape in an effort to destroy evidence, are dismissed; and this case will proceed against Trooper Griffiths, in his individual capacity, on the sole claim that he altered evidence;

(12)     That the remaining defendant, Dennis Griffiths, shall have twenty (20) days from the date of this Memorandum and Order to answer or otherwise respond to the remaining claim in the Amended Complaint; and

(13)     That pursuant to Fed. R. Civ. P. 54(b), this is not a final and appealable order until after entry of judgment adjudicating all the claims and rights of the parties.

DATED this 28th day of February, 2007.

BY THE COURT:


s/ Joseph F. Bataillon
JOSEPH F. BATAILLON
Chief District Judge

15